[S. F. No. 5746.  In Bank.—March 22, 1912.]

## MERCED OIL MINING COMPANY (a Corporation), THE GREAT NORTHERN OIL COMPANY, Plaintiffs, and C. H. CASTLE, Plaintiff and Respondent, v. R. L. PATTERSON et al., Appellants.

PLACER-MINING LOCATION—OIL CLAIM LOCATED BY EIGHT ASSOCIATES—CONVEYANCE OF SEGREGATED PORTION—RIGHTS PASSING TO GRANTEE BEFORE DISCOVERY.—Where eight associates, who had made a consolidated location under the placer-mining laws, of one hundred and sixty acres of vacant, unoccupied mineral lands of the United States as an oil claim, and who were in possession thereof and engaged in the work of development to discover oil thereon, in a certain designated and described portion thereof, make a conveyance of all their interest in a segregated portion to an outsider, before the location had been perfected by a discovery of oil, such conveyance operates to give to the grantee all of the rights which the grantors formerly held in the land covered thereby, that is, the right to possession against all illegal intrusions, while he is in possession diligently prosecuting his work of discovery, and the right to obtain a perfected location by a sufficient discovery while so continuing in possession.

ID.—LAW OF CASE.—The foregoing rule, established by the decision on a prior appeal herein, became the law of the case as to the parties thereto claiming under separate conveyances of such character from the associates.

ID.—RULE ESTABLISHED ONE OF PROPERTY.—Whatever argument may be made against such rule, it must be held, so far as the courts of this state are concerned, to be a rule of property from which a departure should not now be made.

ID.—CONVEYANCE OF SEGREGATED PORTION FOR MERE MONEY CONSIDERATION—EFFECT AS TO REMAINING PORTION OF CLAIM.—If the segregated portion of the location was absolutely conveyed by the associates for a mere money consideration, the portion so conveyed would be thenceforth held as a separate and independent claim, without further connection in any way with the remaining portion, with the result that a subsequent discovery upon the portion conveyed would not redound to the benefit of such remaining portion and thus be sufficient to validate and perfect the location of the owners thereof, and that work done and money expended upon the portion conveyed would not, as to the remaining land, be a sufficient compliance with the laws of the United States requiring the performance annually of work of a certain value.

ID.—AGREEMENT THAT WORK DONE ON SEGREGATED PORTION SHALL INURE TO ENTIRE CLAIM.—Upon the other hand, if as a part of the

consideration for the conveyance of the segregated portion, it was understood and agreed between the associates and their grantee that the labor done and money expended upon the portion conveyed should operate for the benefit of the land remaining in the possession of the associates, such effect would be legally given, and, in turn, the value of the work and the resulting discovery would redound to the benefit of all subsequent grantees of the associates of the remaining portion. The findings and evidence clearly bring this case within the foregoing rule.

Id.—Location by Associates an Entirety—Agreement to Maintain Entirety of Location for Purposes of Work.—Such a mineral location made by an association of eight persons being but a single location and not eight separate locations, is to be treated as an entirety under one location for all purposes of marking boundaries, doing assessment work, expenditure for patent, and discovery of oil, and but a single discovery is all that is required to support it. The associates may maintain this condition of entirety *for such purposes,* for the benefit of themselves and their successors, notwithstanding their conveyance of a segregated portion, where an agreement to that effect with their grantee was a part of the consideration for the conveyance.

Id.—Possession by Subsequent Grantee of Remaining Portion—Assessment Work After Discovery.—After such entire location had been perfected by a discovery of oil on the segregated portion so conveyed by the associates, the actual personal possession by a subsequent grantee of a remaining part of the claim was not essential to the protection of his rights, where, during each year since the discovery, the necessary assessment work was done by the grantee of the portion first conveyed.

APPEAL from a judgment of the Superior Court of Fresno County.   George E. Church, Judge.

The facts are stated in the opinion of the court.

N. C. Coldwell, and E. A. Williams, for Appellants.

Frank H. Short, F. E. Cook, and L. L. Cory, for Respondents.

ANGELLOTTI, J.—This is an appeal by defendants, upon the judgment-roll, from a judgment in favor of plaintiff C. H. Castle against the defendants, adjudging him to be the owner and entitled to the possession of forty acres of mineral land (the mineral being oil), being the south half of the north half of the southeast quarter of section 22, township

19 S., range 15 E., M. D. B. & M. The case was before us on a former appeal involving a judgment against defendants in favor of Castle for said land and also in favor of the Merced Oil Mining Company for the north half of the south half of said southeast quarter of said section, the action having been dismissed as to the Great Northern Oil Company. The judgment was affirmed as to said Merced Oil Mining Company, and reversed as to Castle (*Merced Oil Mining Co.* v. *Patterson et al.*, 153 Cal. 624, [96 Pac. 90].) The action was thus terminated as to said company. A retrial was had between plaintiff Castle and the defendants, resulting in the judgment appealed from.

A very general statement of the material facts appearing on the former appeal is essential to a proper understanding of the question presented. In May, 1899, one Spinks and seven associates had entered upon and located under the placer-mining laws, for the purpose of exploring for oil, the whole of the southeast quarter of said section 22, the same being vacant, unoccupied mineral lands of the United States, complying with all the requirements of the law in regard to the making of such selection, and thenceforth proceeding with the work of development. In January, 1900, they conveyed in severalty to the Merced Oil Mining Company the portion claimed by such company. In February, 1900, they conveyed in severalty to Castle the portion claimed by him. The Merced etc. Company duly prosecuted the work of discovery on the portion conveyed to it, and in September or October, 1900, made a sufficient discovery of oil. This was the first and only discovery ever made on said southeast quarter. The defendants claimed under an entry and attempted location of said southeast quarter made in 1904, Castle never having taken possession of the part conveyed to him nor done any development work thereon. This action was commenced June 24, 1904.

The case thus presented as to both plaintiffs then before the court the question of the effect of a conveyance of all the interest of eight associates, who had made a consolidated location of one hundred and sixty acres as an oil claim, and who were in possession thereof and engaged in the work of development to discover oil thereon, in a certain designated and described portion thereof, by such associates to an outsider,

before the location had been perfected by a discovery of oil. It was squarely held that such a conveyance is operative to give to the grantee all of the rights which the grantors formerly held in the land covered thereby. This much, of course, was essential to the adjudication in favor of the Merced Oil Mining Company, which had taken possession of the forty acres covered by the conveyance to it, and thenceforth had prosecuted development work thereon to a discovery. The court said: "No doubt may be entertained that a conveyance such as this may be made, and that the effect of such conveyance, if such be its expressed intent, is to surrender to the grantee all of the rights which the grantors formerly enjoyed," that is, the right to possession against all illegal intrusions, while he is in possession diligently prosecuting his work of discovery, and the right to obtain a perfected location by a sufficient discovery while so continuing in possession. Such a conveyance before discovery is not an abandonment of the claim as to the portion conveyed, in the sense that such portion is removed from the protection of the original location as a source of the right to possession. The portion so conveyed is not by force of the conveyance rendered vacant and unoccupied mineral land, open for a new entry. To this extent certainly the law of the case is established by the decision on the prior appeal, not only as to the Merced Oil Mining Company, but also as to Castle, for the question involved is one of the questions necessarily presented as to both of said plaintiffs. The opinion determines this question in favor of both said plaintiffs in the manner we have indicated, and the views expressed thereon at that time thus became the law of the case, binding on the lower court on the retrial and binding upon us upon this appeal.

Were the question an open one, however, we see no good reason warranting us in declaring a different rule. The decision was in line with the earlier case of *Miller* v. *Chrisman*, 140 Cal. 440, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444]. The latter case, it is true, was limited to the effect of conveyances of undivided interests among the associates themselves. But so far as this matter is concerned, we see no difference in principle between such conveyances and a conveyance by the associates to an outsider of either an undivided interest or a segregated portion. Such objections as may be

made on the score of public policy or the policy of the mining laws of the United States would appear to apply equally to either. It was said in *Miller* v. *Chrisman,* 140 Cal. 440, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444] : "We cannot perceive why these rights (the rights of associates in possession under such a claim)' may not in good faith be made the subject of conveyance by the associates as well before as after discovery. There is certainly nothing in the express law upon the subject to lead to the view that this cannot be done, and there is much to give countenance to the contrary conviction." Whatever argument may be made against this view, we are satisfied that, so far as the courts of this state are concerned, it must be held to be a rule of property from which a departure should not now be made. This was fully recognized by Chief Justice Beatty (who dissented in *Miller* v. *Chrisman,* 140 Cal. 440, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444]), by his concurrence in the opinion filed on the former appeal in this case. It is likewise to be noted that in affirming the judgment of this court in *Miller* v. *Chrisman,* 140 Cal. 440, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444], the supreme court of the United States said nothing inconsistent with what had been said by this court on this question. (*Miller* v. *Chrisman,* 197 U. S. 313, [49 L. Ed. 770, 25 Sup. Ct. 468].)

Upon the former appeal the record did not show anything in regard to the conveyance to the Merced etc. Company, other than that it was an absolute conveyance of a segregated portion for a money consideration. It was held that, nothing else appearing, the segregated portion conveyed must thenceforth be held to be a separate and independent claim, without further connection in any way with the remaining portion, with the result that a subsequent discovery upon the portion conveyed would not redound to the benefit of such remaining portion and thus be sufficient to validate and perfect the location of the owners thereof, and that work done and money expended upon the portion conveyed would not be a sufficient compliance with the laws of the United States requiring the performance annually of work of a certain value, as to the remaining land. But the court, for the purposes of the new trial ordered, was very clear in its statement of the circumstances under which a different conclusion would be required. After saying that the conclusion reached expressed the con-

dition that must obtain where "the agreement of the parties goes no further than to a bare conveyance of the grantor's possessory rights," the court said: "But, upon the other hand, by convention and agreement of the parties a radically different result may be legally accomplished. No one would question but that the associates might authorize a stranger to their interests to enter upon their land and sink a well, agreeing, in the event of a discovery of oil, to convey to such person any designated portion of the claim. In such case, clearly the work would be done for the benefit of all the associates and of the whole claim. It cannot make any difference that the conveyance to the party who is so to develop the land is made before or after discovery, provided that it be understood between them, as part of the consideration, that the work done and the discovery when made shall be for the benefit of the whole claim. As parol evidence is always received to show the true consideration of a contract, this part of the consideration may rest upon an oral agreement of the parties and need not, therefore, be embodied in the deed. . . . No reason is perceived why the parties may not make a conveyance of a divided as well as an undivided interest, to the end that the grantee may prosecute the work of discovery for the benefit of all. . . . Coming to apply this principle to the facts in this case, if as a part of the consideration of the deed to the Merced Oil Mining Company it was understood and agreed between the parties that the labor done and money expended upon the Merced Company's forty acres should operate for the benefit of the land remaining in the possession of the associates, such effect would be legally given. And, in turn, the value of the work and the resulting discovery would redound to the benefit of all subsequent grantees of the associates."

It cannot be seriously questioned that the findings of the trial court on the retrial clearly bring this case, as to the Castle forty acres, within the rule thus declared. Some point is made of the fact found that the first conveyance by the associates was to one Harris, instead of to the Merced Oil etc. Company, and that such company, which was the immediate grantee of Harris instead of the associates and which had not been organized at the time of the conveyance to Harris, never agreed to do the development work for the benefit of the associates and that Harris never personally assumed any such

undertaking, but only agreed that the company to be organ-- ized should do so. There is no force in this claim. The findings clearly show that it was agreed at and before the time of the conveyance to Harris, between the associates on the one side, and Harris and four other persons (one of whom was Castle) on the other, as a part of the consideration for the execution and delivery of the deed, that Harris and his associates would organize such corporation, that Harris would convey the property to the corporation immediately upon its organization, that such corporation would thereupon immediately occupy the land and proceed diligently with the work of exploration for oil thereon, that the labor done and money expended by it on such land should operate for the benefit of the remaining land and all subsequent grantees thereof, and that any discovery of oil thereon should operate to the benefit of the remaining land in the way of perfecting the location of the original associates and their subsequent grantees. They further show that the course of procedure thus agreed upon, to use the language of counsel for respondent, "was adopted, acted upon and carried into execution in full compliance with the understanding and intention of all of the parties." Harris did exactly what he agreed to do as a part of the consideration for the deed, and the corporation subsequently organized has done exactly what he agreed, as a part of such consideration, that it would do in the matter of occupying, exploring for, and developing oil thereon. Regardless of all question whether the corporation was in any way bound by the undertaking of Harris to the associates, we have that undertaking fully satisfied and the consideration agreed upon executed. In all other respects, the findings on the retrial are the same as they were on the first trial.

Assuming, as contended by learned counsel for appellants, that what was said on the former appeal as to the effect of such an undertaking by the purchaser in part consideration of the sale is not the law of the case, we have upon this appeal simply the question whether we should adhere to the views thus expressed. It is the established rule, as declared in *Miller* v. *Chrisman*, 140 Cal. 440, that a location made by an association of persons being but a single location and not eight separate locations, is to be treated as an entirety under one location for all purposes of marking boundaries, doing assessment

work, expenditure for patent, and discovery of oil, and that but a single discovery is all that is required to support it. We see no good reason why the associates may not maintain this condition of entirety *for such purposes,* for the benefit of themselves and their successors, notwithstanding their conveyance of a segregated portion under such circumstances as are disclosed by the findings in this case. The conveyance was made in consideration of the undertaking to do the discovery work for the benefit of the associates and their grantees. By reason of that undertaking, the grantee, while possessing all the rights of the associates as to the portion conveyed, was substantially and in effect the agent of the associates for the purpose of doing the necessary work and making such a discovery as would perfect the original location as an entirety. As was pointed out in the former opinion, the only difference between such a grantee, and one to whom a conveyance of a segregated portion has been promised upon a discovery by him sufficient to perfect the location, is that he has been paid his consideration in advance. In both cases the work is being done "for the benefit of all the associates and of the whole claim." For the purposes we have specified, it is the work of the associates. We are of the view that the former opinion correctly states the law on this question, and should be adhered to. We find nothing in *McLemore* v. *Express Oil Co.,* 158 Cal. 559, [139 Am. St. Rep. 147, 112 Pac. 59], that is at all inconsistent with either *Miller* v. *Chrisman,* 140 Cal. 440, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444], or our decision on the former appeal in this case, nor can we perceive that it involved any question material here.

As we have said, the defendants claim under an entry made in 1904. At that time, in view of what we have already said, the location had long since been perfected as to the entire one hundred and sixty acres, including the portion conveyed to Castle by the associates, by a sufficient discovery of oil on the portion held by the Merced Company. We are not concerned here with any question as to the effect of Castle's lack of personal possession of the portion conveyed to him, pending such discovery, for there was no attempted entry by defendants during such period. After the entire location had been perfected by discovery, such actual possession was not essential to the protection of his rights. As we understand the

record, it is not questioned that the necessary assessment work has been done on the Merced Company's portion of the one hundred and sixty acres each year since the discovery of oil in 1900, to and including the year 1903.

The judgment is affirmed.

Henshaw, J., Lorigan, J., Shaw, J., and Melvin, J., concurred.